United States District Court
Southern District of New York

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/31/05

**ANONYMOUS**

       Plaintiff,

  - against -

**JP MORGAN CHASE & CO. AND**
~~CHASE MANHATTAN BANK~~,

       Defendants.

05 Civ. 2442 (JGK)

<u>MEMORANDUM OPINION</u>
<u>AND ORDER</u>

**JOHN G. KOELTL, District Judge:**

  This is a motion to stay these proceedings pending arbitration. The plaintiff, Anonymous, filed the Complaint against the defendants, JP Morgan Chase & Co. ("JP Morgan") and Chase Manhattan Bank USA, N.A. ("Chase"), in the New York State Supreme Court, New York County, on December 29, 2004, alleging that: (1) the defendant Chase extended credit to pay for the plaintiff's gambling losses in violation of Article 1, § 9 of the New York State Constitution and New York General Obligation Laws § 5-401, 5-411, and 5-419; and (2) the plaintiff had paid his outstanding obligation by a minimum payment. (See Complaint ("Compl.") at ¶¶ 22-25.) The plaintiff seeks damages of no less than $800,000 as well as declaratory and injunctive relief.

  The defendants removed the action to federal court based on original jurisdiction under the Edge Act, 12 U.S.C. § 632, and

1

supplemental jurisdiction. (See Def.'s Notice of Removal at ¶¶ 4-6.) The validity of the removal is not disputed.

The defendants now move, pursuant to § 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, for an order staying these proceedings in favor of arbitration, arguing that the parties entered into a valid and enforceable arbitration agreement that covers this dispute. For the reasons stated below, the defendant's motion to stay in favor of arbitration is granted.

**I.**

The following facts are undisputed unless otherwise noted. In November 2002, the plaintiff applied for a credit card account with the defendant Chase, and an account was opened for him and a credit card issued. (See Def.'s Declaration of Gregory D. Lee, sworn to March 18, 2005 ("Lee Decl."), at ¶ 5.) The plaintiff claims that to the best of his recollection, he applied for the credit card over the Internet. (See Pl.'s Affirmation in Opposition to Def.'s Motion to Stay, sworn to Mar. 31, 2005, at ¶ 3.) The defendants dispute the plaintiff's representation, providing a copy of the credit card application, received by mail and hand signed by the plaintiff. (See Def.'s Declaration of Joette G. Herrera, sworn to Apr. 20, 2005 ("Herrera Decl."), at ¶¶ 4-5.) On the signed credit card

application, the plaintiff wrote that the plaintiff was employed as an "Analyst" with an annual income of $100,000. (See Ex. A to Herrera Decl.)

Chase sent a Cardmember Agreement to the plaintiff in November 2002, setting forth the terms and conditions associated with the plaintiff's use of the Chase card. The Cardmember Agreement provides that "[t]his Agreement is governed by the laws of the United States and the State of Delaware. Any dispute concerning any item in this Agreement will be resolved by those laws." (Ex. A to Lee Decl. at 5.) The Cardmember Agreement also contains a section entitled Arbitration Agreement. (See Lee Decl. at ¶¶ 5-7.) The Arbitration Agreement provides that:

> IT IS IMPORTANT THAT YOU READ THIS ARBITRATION AGREEMENT CAREFULLY. IT PROVIDES THAT YOU MAY BE REQUIRED TO SETTLE A CLAIM OR DISPUTE THAT IS COVERED BY THIS ARBITRATION AGREEMENT THROUGH ARBITRATION, EVEN IF YOU WOULD PREFER TO LITIGATE THE CLAIM IN A COURT. YOU ARE GIVING UP RIGHTS YOU MIGHT HAVE TO LITIGATE SUCH CLAIMS IN A COURT OR BEFORE A JURY OR TO PARTICIPATE IN A CLASS ACTION LAWSUIT OR OTHER REPRESENTATIVE ACTION WITH RESPECT TO SUCH A CLAIM. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT, SUCH AS DISCOVERY OR THE RIGHT TO APPEAL THE DECISION, MAY NOT BE AVAILABLE IN ARBITRATION OR MAY BE MORE LIMITED. CERTAIN CLAIMS BY EITHER OF US AGAINST THE OTHER SEEKING UP TO $25,000, EXCLUDING INTEREST, COSTS AND FEES, MAY BE RESOLVED BY LITIGATION AND NOT ARBITRATION.

(Ex. A to Lee Decl. at 11.)

The Arbitration Agreement further provides that:

Any claim or dispute ("Claim", which term may refer to more than one claim as is appropriate for the context in which it is used) by either you or us against the other, or against the employees, agents, or assigns of

3

> the other arising from or relating in any way to the Cardmember Agreement, any prior Cardmember Agreement, your credit card Account or the advertising, application or approval of your Account, will, at the election of either you or us, be resolved by binding arbitration. This Arbitration Agreement governs all Claims, whether such Claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision, or any legal theory of law such as [respondeat] superior, or any other legal or equitable ground and whether such Claims seek as remedies money damages, penalties, injunctions, or declaratory or equitable relief. Claims subject to this Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement or any prior Cardmember Agreement. As used in this Arbitration Agreement, the term 'Claim' is to be given the broadest possible meaning."

(Id. at 12.)

The Arbitration Agreement also provides that the "party filing an arbitration must choose one of the following three arbitration administrators: American Arbitration Association; JAMS; or National Arbitration Forum." (Id. at 13.)

The plaintiff used the Chase credit card after receiving the Cardmember Agreement. (See Lee Decl. at ¶ 8.) The Cardmember Agreement also contained a section entitled "Changing the Terms of this Agreement" which provides that Chase may amend certain terms in the Cardmember Agreement. (See Lee Decl. at ¶ 9.) Chase sent to the plaintiff, in March 2003, a notice amending the terms of the Arbitration Agreement section of the Cardmember Agreement. (See id. at ¶ 11.) The terms remained

4

essentially the same, with the exception of arbitration costs. (See id.) This notice was sent to the address at which the plaintiff regularly received credit card statements and was not returned as undeliverable. (See id. at ¶ 12.) The notice provided that Chase account holders could reject the amendments to the Cardmember Agreement by sending Chase written notice by April 25, 2003. (See id. at ¶ 13.) The plaintiff used the Chase credit card to make purchases after the effective date of amendment, May 1, 2003. (See id. at ¶ 14.)

Beginning from July 23, 2004, the plaintiff used the plaintiff's Chase credit card to obtain funds from Chase that were used to gamble on the Internet. (See Ex. A to Compl.) The plaintiff had accumulated $19,500 in debt on the Chase credit card by October 29, 2004. (See Compl. at ¶ 8.) The plaintiff transferred the card's balance to MBNA, a competing credit card company, at a lower interest rate. (See id. at ¶ 9.) The plaintiff accumulated an additional $22,000 in debt using the Chase credit card between the period of October 26, 2004 and November 13, 2004. (See Compl. at ¶ 10.)

**II.**

The plaintiff advances several arguments to contest the validity of the Arbitration Agreement. First, the plaintiff disputes that the plaintiff and the defendants entered into a

valid, enforceable arbitration agreement, arguing that the plaintiff never agreed to forgo his right to a trial in favor of arbitration. Second, the plaintiff argues that the arbitration clause should not be enforced, because the contract formation process was characterized by both procedural and substantive unconscionability. Third, the plaintiff argues that the Court of Appeals for the Second Circuit will not enforce agreements entered into by Internet download. Fourth, the plaintiff argues that the National Arbitration Forum ("NAF") is an inherently biased arbitration forum. Each of these claims will be discussed in turn.

### III.

The defendants move pursuant to 9 U.S.C. § 3 to stay this action pending arbitration of the plaintiff's claims in accordance with the provisions of the Arbitration Agreement.

As the Court of Appeals for the Second Circuit has recently noted: "The Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (1988), requires the federal courts to enforce arbitration agreements, reflecting Congress' recognition that arbitration is to be encouraged as a means of reducing the costs and delays associated with litigation." Vera v. Saks & Co., 335 F.3d 109, 116 (2d Cir. 2003) (per curiam) (quoting Deloitte Noraudit A/S

v. Deloitte Haskins & Sells, U.S., 9 F.3d 1060, 1063 (2d Cir. 1993)).

The relevant section of the FAA states: "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

The Court of Appeals has instructed that courts must address four factors in determining whether to stay a proceeding pending arbitration: "[F]irst, [the Court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration." Genesco, Inc.

v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987) (internal citations omitted); see also Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 76 (2d Cir. 1998); Martin v. SCI Management L.P., 296 F. Supp. 2d 462, 467 (S.D.N.Y. 2003). In this case, it is only necessary to address the first and second factors because the plaintiff asserts no federal statutory claims and a consideration of the first two factors indicates that all claims are arbitrable.

The plaintiff disputes that the plaintiff and the defendants entered into a valid, enforceable arbitration agreement, arguing that the plaintiff never agreed to forgo his right to a trial in favor of arbitration. This argument is without merit. Using a credit card and making payments to the credit provider binds the cardholder to the terms and conditions of card use. See, e.g., Grasso v. First USA Bank, 713 A.2d 304, 309 (Del. Super. 1998) (holding that by using the credit card and making a first payment, the plaintiff "unequivocally manifested acceptance of the Agreement's terms"). Here, there is uncontested evidence that the plaintiff used the Chase card and made payments to Chase for that use for several months. (See Ex. A to Compl.) In doing so, the plaintiff agreed to the terms of the Arbitration Agreement.

To determine whether a particular dispute falls within the scope of an agreement's arbitration clause, a court should classify the particular clause as either broad or narrow. "Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001); see also Coffey v. Cushman & Wakefield, Inc., No. 01 CIV. 9447, 2002 WL 1610913, at *7 (S.D.N.Y. July 22, 2002).

Here, the arbitration clause in the Arbitration Agreement is a broad one, providing that

> [a]ny claim or dispute ("Claim", which term may refer to more than one claim as is appropriate for the context in which it is used) by either you or us against the other, or against the employees, agents, or assigns of the other arising from or relating in any way to the Cardmember Agreement, any prior Cardmember Agreement, your credit card Account or the advertising, application or approval of your Account, will, at the election of either you or us, be resolved by binding arbitration.

(Ex. A to Lee Decl. at 12.) Moreover, the Arbitration Agreement provides that "the term 'Claim' is to be given the broadest possible meaning." (Id.)

The arbitration agreement at issue represents a prime example of a "broad" arbitration clause; this dispute is well

9

within the scope of the Arbitration Agreement. See Oldroyd, 134 F.3d at 76 (holding that a clause stating that "[a]ny dispute, controversy or claim arising under or in connection with [the contract]" is a broad arbitration provision); Collins & Aikman Prod. Co. v. Building Systems, Inc., 58 F.3d 16, 20 (2d Cir. 1995) (finding that a clause "submitting to arbitration '[a]ny claim or controversy arising out of or relating to th[e] agreement,' is the paradigm of a broad clause").

The existence of a broad arbitration clause creates a presumption of arbitrability which can be overcome only if it may be said "with positive assurance" that the arbitration clause is not susceptible to the interpretation that it covers the asserted dispute. Oldroyd, 134 F.3d at 76; see also Lewis Tree Service, Inc. v. Lucent Technologies, Inc., 239 F. Supp. 2d 332, 336 (S.D.N.Y. 2002). Here, each of the claims asserted plainly relate to the Chase credit card. It cannot be said "with positive assurance" that the arbitration clause is not susceptible to the interpretation that it covers the asserted dispute. This clause creates a presumption of arbitrability.

## IV.

The plaintiff next contends that the arbitration clause is procedurally unconscionable, arguing that: (1) the plaintiff never had a reasonable opportunity to understand the terms and

conditions of the Cardmember Agreement; (2) there was a lack of opportunity for meaningful negotiation; (3) the contract was offered on a take-it-or-leave-it basis; (4) the terms were never explained to the plaintiff; and (5) the plaintiff was compelled to accept the terms of the Cardmember Agreement.

The plaintiff further argues that the arbitration clause is substantively unconscionable because the enforcement of this unilateral contract would allegedly rob the plaintiff of his constitutional right to a civil jury trial.

Under 9 U.S.C. § 2, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate [an] arbitration agreement." Doctor's Assoc., Inc. v. Casarotto, 517 U.S. 681, 687 (1996). In determining whether a generally applicable contract defense may invalidate an arbitration agreement, a court looks to state law. See Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987).

The parties dispute whether the choice of law provision in the Cardmember Agreement is valid and whether Delaware law applies. The plaintiff argues that New York law applies, while the defendants contend that Delaware law controls. The Cardmember Agreement provides that Delaware law governs in case of a dispute, and the plaintiff presents no reason that the choice of law provision is invalid. (See Ex. A to Lee Decl. at

11

5.) In any event, the parties agree that New York and Delaware law do not differ on the substantive law to be applied – both states recognize that arbitration provisions are enforced but can be disregarded if the contracts are unconscionable. See Graham v. State Farm Mut. Auto. Ins. Co., 565 A.2d 908, 913 (Del. 1989) (holding that "[b]ecause the arbitration clause is part of a valid, enforceable contract and is not unconscionable, we believe that it constitutes an effective waiver of the parties' right to a jury trial"); Salvano v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 647 N.E.2d 1298, 1302 (N.Y. 1995) (noting that "in the absence of an established ground for setting aside a contractual provision, such as fraud, duress, coercion or unconscionability, a court must enforce the parties' arbitration agreement according to its terms"); Edwards v. North American Van Lines, 513 N.Y.S.2d 895, 897 (3d Dep't 1987) (holding that "[s]ince plaintiffs have failed to make a prima facie showing of fraud or unconscionability, we conclude that, in the event plaintiffs successfully prove an agency relationship, they must pursue their claim in arbitration").

Under Delaware contract law, if a court determines as a matter of law that a contract or a clause of a contract is unconscionable at the time the contract was made, it may refuse to enforce the contract, sever the unconscionable portion, or

12

modify the application of any unconscionable clause. See Del. Code Ann. tit. 6, § 2302. To render void a contractual provision on the basis of unconscionability, a court must find that the party with superior bargaining power used it to take unfair advantage of the other party. Graham, 656 A.2d at 912. Thus, for a contract provision to be deemed unconscionable, its terms must be "so one-sided as to be oppressive." Id. (internal quotations and citations omitted). A finding of unconscionability may be appropriate where an arbitration mechanism set forth in a contract is unfairly structured. Id. However, "mere disparity between the bargaining power of the parties to a contract will not support a finding of unconscionability." Id. (citing Tulowitzki v. Atlantic Richfield Co., 396 A.2d 956, 960 (1978)); see also Hale v. First USA Bank, N.A., No. 00 Civ. 5406, 2001 WL 687371, at *4 (S.D.N.Y. June 19, 2001).

Similarly, under New York law, an "unconscionable" contract is "one which 'is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms.'... A determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made – i.e., 'some showing of

13

an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" Gillman v. Chase Manhattan Bank, N.A., 534 N.E.2d 824, 828 (N.Y. 1988); see Rosenfeld v. Port Authority of New York & New Jersey, 108 F. Supp. 2d 156, 164 (E.D.N.Y. 2000).

The arbitration agreement at issue is neither procedurally nor substantively unconscionable. The arbitration clause is clearly set out in all-caps following a heading in all-caps and bold print titled "Arbitration Agreement." The provision is clearly written. The plaintiff signed the Agreement without any high-pressured sales tactics used on him. He was free to go to other credit card issuers.

The plaintiff points out that the Cardmember Agreement is a printed form and is offered on a take-it-or-leave-it basis. However, this is insufficient to render the contract unconscionable, particularly when the plaintiff had the ability to go to other sources of credit. See Novak v. Overture Services, Inc., 309 F. Supp. 2d 446, 452 (E.D.N.Y. 2004) (citing Rosenfeld, 108 F. Supp. 2d at 164, which noted that an "E-ZPass customer agreement cannot be considered procedurally unconscionable, or a contract of adhesion, simply because it is a form contract"); In re Apollo Air Passenger Computer

14

Reservation System (CRS), 720 F. Supp. 1061, 1065 (S.D.N.Y. 1989) (holding that although the contract was presented "on a take it or leave it basis, that alone does not render the contract unconscionable"); see also Ranieri v. Bell Atlantic Mobile, 304 A.D.2d 353, 354 (1st Dep't 2003) (noting that "[i]t does not avail plaintiff to argue that the arbitration provision is unconscionable without offering evidence that he could not have chosen another service provider").

Turning to the substantive provisions of the Arbitration Agreement, there was no substantive unconscionability. There is no provision of the contract that the plaintiff points to which provided that Chase could obtain benefits of arbitration that the plaintiff could not. It is not one-sided or oppressive. There is, in short, no provision of the contract that was obtained through procedurally unconscionable means or that was substantively unconscionable.

The plaintiff attempts to distinguish the credit card cases cited by the defendants which have upheld the application of arbitration provisions. The plaintiff argues that those were for "sophisticated" credit cards, such as "Gold" or "Corporate" cards. See Whalen v. American Express Co., No. 602754/01 slip. op. (N.Y. Sup. Ct. July 8, 2002) (holding that the plaintiff was bound by the American Express Cardmember Agreement to

15

arbitrate); Harwood v. American Express Co., No. 01-Civ-6735, slip. op. (S.D.N.Y. Jan. 16, 2002) (holding that plaintiff had sufficient notice that any disputes arising out of her American Express Cardmember Agreement would be subject to arbitration). These cases, however, strongly support the validity of the arbitration agreement in this case. Both courts required arbitration in accordance with the terms of the arbitration agreement. Moreover, the plaintiff's application was in fact for a "sophisticated" credit card. He obtained a Visa Platinum card. The record also reflects that, at the time of application, the plaintiff was an "Analyst" earning $100,000 a year. Thus, the plaintiff cannot claim that he was an unsophisticated consumer. There is no basis to find unconscionability in this case.

## IV.

The plaintiff's argument contesting the validity of agreements entered into over the Internet is also without merit. The defendants present a physical application signed by the plaintiff that demonstrates that the plaintiff was mistaken when he affirmed that to the plaintiff's "best recollection," the plaintiff applied for the Chase card over the Internet. (See Def.'s Herrera Decl. at ¶ 4; Ex. A to Def.'s Herrera Decl.; see also Pl.'s Affirm. in Opposition Def.'s Motion to Stay, sworn to

16

March 31, 2005, at ¶ 3.) Whatever the initial source of the plaintiff's application, he signed and submitted a physical application. Thereafter, he was sent the Cardmember Agreement with the relevant arbitration clause. The plaintiff then used the card and made payments, which binds the plaintiff to the terms of the Cardmember Agreement. See Grasso, 713 A.2d at 309.

V.

The plaintiff also argues that the Arbitration Agreement is unenforceable because the organization that would conduct the arbitration, the NAF, is biased. To demonstrate this bias, the plaintiff cites statistics provided by various organizations for the proposition that consumers rarely prevail in arbitrations of debt collection cases before the NAF. There is no merit to the plaintiff's argument.

First, the defendants agree that the plaintiff can choose either of the other two organizations under the Cardmember Agreement - the American Arbitration Association (AAA) or JAMS. (See Def.'s Reply Motion to Stay at 6.) That is sufficient for the plaintiff to avoid arbitration before the NAF and thus to moot this argument.

Second, the defendants correctly point out that the NAF is only the organization that runs the arbitration; it is not the arbitrator. According to Rule 21 of the NAF Code of Procedure,

17

the arbitrator for a particular case is selected pursuant to "mutually agreeable terms."[1] The bias of the arbitrator can generally only be tested after the arbitration and there is no basis here to conclude that any arbitrator chosen to conduct the arbitration would be biased in any way. See Aviall, Inc. v. Ryder Sys., Inc., 110 F.3d 892, 895 (2d Cir. 1997). Finally, numerous courts have found the NAF to be an adequate and fair arbitral forum and have upheld arbitration provisions requiring arbitration in the NAF. See, e.g., Bank One v. Coates, 125 F. Supp. 2d 819, 835 (S.D. Miss. 2001); Smith v. Equifirst Corp., 117 F. Supp. 2d 557, 563-64 (S.D. Miss. 2000); Marsh v. First USA Bank, N.A., 103 F. Supp. 2d 909, 925-26 (N.D. Tx. 2000); Arakawa v. Japan Network Group, 56 F. Supp. 2d 349, 355 (S.D.N.Y. 1999); see also Hale, 2001 WL 687371, at *4. The plaintiff's claims with respect to the NAF provide no basis to decline to stay this action in favor of arbitration. This action will therefore be stayed pending arbitration of the plaintiff's claims. See Kurz v. Chase Manhattan Bank USA, N.A., 319 F. Supp. 2d 457, 467 (S.D.N.Y. 2004).

---

[1] National Arbitration Forum, Code of Procedure, Rule 21 (July 1, 2003), at http://www.arb-forum.com/programs/code/070103.pdf.

## CONCLUSION

For the foregoing reasons, the defendants' motion to stay these proceedings in favor of arbitration is **granted** in its entirety.

SO ORDERED.

Dated: New York, New York
October 24, 2005

John G. Koeltl
**United States District Judge**